IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


SHARON HAUGHT, DARLENE KEMP and
JOYCE LEONARD,

     Plaintiffs,

v.                                      Civil Action No. 5:03CV109
                                                   (STAMP)

THE LOUIS BERKMAN, LLC, WEST VIRGINIA
d/b/a FOLLANSBEE STEEL,

     Defendant.


**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**REGARDING THE CLAIMS OF PLAINTIFF SHARON HAUGHT**


I.  Procedural History

      On July 28, 2003, the plaintiffs filed a complaint in this Court asserting claims against the defendant for unlawful sex discrimination, harassment, and retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000-e, et seq., the Equal Pay Act, 29 U.S.C. § 206(d), and related West Virginia statutes.  On September 13, 2004, the defendant filed a motion for summary judgment pertaining to plaintiff, Sharon Haught ("Haught").  The plaintiffs responded to this motion and the defendant replied.

      The defendant's motion for summary judgment is now fully briefed and ripe for review.  After considering the parties' memoranda and the applicable law, this Court finds that the motion should be granted and that Haught's claims should be dismissed.

## II.  Background

This action arises from the plaintiffs' employment relationship with the defendant, The Louis Berkman, LLC, West Virginia d/b/a Follansbee Steel.  The plaintiffs contend that the defendant has maintained a policy and practice of discrimination against its female employees.  Further, the plaintiffs assert that the defendant has subjected the plaintiffs to unlawful retaliation, including termination.

In the complaint, Haught alleges that the defendant is liable to her for failure to promote, retaliation, and discriminatory compensation practices.  She seeks compensatory damages, punitive damages, prejudgment interest, and attorney's fees and costs.

## III.  Undisputed Facts

Haught began her employment with the defendant in 1988.  She was hired for a clerical position with Terne and Sheet Metal Specialty, a subdivision of the defendant.  In 1993, Haught moved to an inside sales position and began taking and entering orders for standard docks.  In 1995 or 1996, Haught was promoted to Office Manager and was responsible for refilling supplies, managing employee time sheets, and handling customer complaints in addition to her duties in sales.  In April 2000, Haught became the marketing coordinator for the new marketing department.  The duties of this position included mailing information to customers, making travel arrangements for trade shows, aiding in the design of sales

brochures for the trade shows, and taking sales calls for standard docks. At the time of her transfer, she received $20,100.00 in annual salary, which later increased to $20,700.00. In August 2000, Richard Smith was transferred to the marketing department from the technical sales department. His responsibilities included creating boat show displays, attending boat shows, and taking technical sales calls. His salary was $28,600.00 at the time of his transfer and was later increased to $29,200.00.

In November 2000, the marketing department was expanded to encompass inside sheet metal sales and cabinet sales. The sales/marketing staff was expanded to eight persons who worked under the supervision of Joyce Leonard ("Leonard"). Throughout this expansion, Haught retained her position and duties. In November 2001, the department was relocated to the Sheet Metal building. Leonard refused to relocate, and Haught began reporting to Jim Looman (the new General Manager) and Mark Robinson. The company continued restructuring after the move, which resulted in changes to Haught's duties but not to her salary or benefits.

On April 23, 2002, Haught filed a complaint with the company alleging discrimination and harassment with respect to overtime and the scope of her duties. She also alleged that a coworker, Phyllis Parissi ("Parissi"), used explicit language in the workplace. In addition, she complained of racial comments directed at Leonard. This complaint was referred to Robert Schultz ("Schultz"), the

company's in-house counsel and industrial relations officer. Schultz gave Haught the opportunity to meet privately with him to address her concerns but she refused, opting instead to pursue her charges with the Equal Employment Opportunity Commission ("EEOC").

In September 2003, Haught's department was downsized again and her position was one of two that was eliminated. In March 2004, the department contacted Haught after the decision was made to hire two new employees. She applied for the seasonal inside sales position and was hired on May 1, 2004. She resigned from the position on July 23, 2004.

## IV. Applicable Law

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). However, as the

United States Supreme Court noted in <u>Anderson</u>, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." <u>Id.</u> at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Id.</u> at 250; <u>see also</u> <u>Charbonnages de France v. Smith</u>, 597 F.2d 406, 414 (4th Cir. 1979)(Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing <u>Stevens v. Howard D. Johnson Co.</u>, 181 F.2d 390, 394 (4th Cir. 1950))).

In <u>Celotex</u>, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. <u>See</u> <u>Oksanen v. Page Mem'l Hosp.</u>, 912 F.2d 73, 78 (4th Cir. 1990), <u>cert. denied</u>, 502

U.S. 1074 (1992). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. See <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

## V. <u>Discussion</u>

In its motion for summary judgment, the defendant makes the following allegations: (1) several of Haught's claims are barred either for failure to exhaust administrative remedies or due to the expiration of the applicable statutes of limitation; (2) Haught's sexual harassment claim must fail because she cannot demonstrate the existence of severe and pervasive conduct that unreasonably altered her work environment; (3) Haught's failure to promote claim must fail because she was promoted three times without applying or interviewing for positions, because she took no effort to express interest in the positions for which she claimed she was overlooked, and because she was not qualified for any of these positions; (4) Haught's equal pay claims must fail because she cannot cite any similarly situated male employees who were paid at a higher rate; and (5) Haught's retaliation claims must fail because the changes in her job responsibilities occurred before she filed a charge with the EEOC and her layoff occurred over two years after she filed the charge.

In response, Haught argues that: (1) her Equal Pay Act claim survives because she performed substantially similar duties to

Richard Smith ("Smith"), a co-worker, and was paid less than Smith for her work; (2) her Title VII claim of disparate pay survives because she has provided sufficient evidence regarding the disrespect or disregard for women in the workplace; (3) her failure to promote claim is viable because, given the defendant's "subjective and even secretive" hiring practices, her prima facie showing does not require proof that she applied for the subject positions, and a reasonable jury could find that she was qualified for the positions but was denied them because of her sex, and because the failure to promote her was motivated, at least in part, by a discriminatory animus towards women; and (4) her retaliation claim should survive because the protected activity in this case was not necessarily the filing of the EEOC complaint, but also could have been the filing of complaints of unequal pay in the fall of 2000 and again in 2001.

A.    Federal and State Equal Pay Claims

The federal Equal Pay Act states in pertinent part:

No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: Provided, That an employer who is

7

> paying a wage rate differential in violation of this
> subsection shall not, in order to comply with the
> provisions of this subsection, reduce the wage rate of
> any employee.

29 U.S.C. § 206(d)(1). A plaintiff bringing a claim under the

Equal Pay Act must first establish a prima facie case of wage

discrimination. Corning Glass Works v. Brennan, 417 U.S. 188, 195

(1974). In order to establish a prima facie case, a plaintiff must

prove "(1) that her employer has paid different wages to employees

of opposite sexes; (2) that said employees hold jobs that require

equal skill, effort, and responsibility; and (3) that such jobs are

performed under similar working conditions." Brinkley v. Harbour

Rec. Club, 180 F.3d 598, 613 (4th Cir. 1999).

Once the plaintiff makes a prima facie showing, the burdens of

production and persuasion shift to the defendant. See Brinkley-Obu

v. Hughes Training, Inc., 36 F.3d 336, 344 (4th Cir. 1994). The

defendant must then prove by a preponderance of the evidence that

the wage differential between the male and female employees falls

within one of four statutory affirmative defenses: "(i) a seniority

system; (ii) a merit system; (iii) a system which measures earnings

by quantity or quality of production; or (iv) a differential based

on any other factor other than sex." 29 U.S.C. § 206(d)(1). If

the defendant provides sufficient evidence, the burden shifts back

to the plaintiff to show that there is a "genuine issue for trial."

White v. Rockingham Radiologists, Ltd., 820 F.2d 98, 101 (4th Cir.

1987)(quoting Fed. R. Civ. P. 56(e)).

In this case, the defendant argues that Haught's Equal Pay Act claim cannot survive summary judgment because she has failed to demonstrate that she was paid less than a male employee with a position of equal skill, effort, and responsibility. The defendant contends that Haught's position was not identical to that of Smith because Smith, in addition to his marketing duties, also handled technical sales duties. The defendant asserts that Haught's position did not require knowledge of technical sales. Further, the defendant asserts that Smith's marketing duties were more substantial and required greater skill than those of Haught. Thus, the defendant argues that Smith's position was not comparable for the purposes of the Equal Pay Act.

In response, Haught claims that there is a genuine issue of material fact with respect to scope of Smith's duties as compared to those of Haught. She claims that the testimony of Smith and her supervisor, Joyce Leonard ("Leonard"), support her contention that she and Smith had equal responsibility in the Marketing Department and that their duties were substantially similar. Moreover, she argues that because the defendant's interpretation of Smith's testimony differs from the testimony itself, she should be entitled to present this dispute of material fact to a jury.

The United States Court of Appeals for the Fourth Circuit has held that the test for the viability of a claim under the Equal Pay Act "is whether the work is substantially equal." <u>Brewster v.</u>

Barnes, 788 F.2d 985, 991 (4th Cir. 1986). "'The crucial finding on the equal work issue is whether the jobs to be compared have a 'common core' of tasks; i.e., whether a significant portion of the two jobs is identical. The inquiry then turns to whether the differing or additional tasks make the work substantially different.'" Id. (quoting Brobst v. Columbus Servs. Int'l, 761 F.2d 148, 156 (3d Cir. 1985)).

In this case, the defendant concedes that the positions of Smith and Haught had a "common core" of tasks related to marketing. See Def.'s Reply at 2. However, the defendant asserts that the additional tasks delegated to Smith and Haught distinguished their positions and justified their pay differentials. Specifically, the defendant argues that Haught's additional tasks were administrative in nature while Smith performed technical duties that required more skill and knowledge with respect to layout and design work.

After a thorough review of the record, this Court agrees with the defendant that the positions were not "substantially equal." Smith's official statements suggest that he continued to do technical sales as part of his additional duties, while Haught's extra duties primarily involved office administration. He noted in his declaration that he observed Haught "respond to minor technical questions posed by customer (sic) based on information that she acquired informally during her many years in the Dock Systems' sales department." Smith Decl. ¶ 7 (emphasis added).

When asked during his deposition if Haught did technical sales, he answered: "She would do some, she would help, but it was -- I think she more did, um -- continued her administrative work over the sales department." Smith Tr. at 29. Smith gave an impression of the limitations of Haught's knowledge and abilities in technical sales in his declaration: "I . . . believe based on my observations of Ms. Haught's skills and abilities, <u>if trained to do so</u>, she <u>could have</u> competently assumed the duties of the technical sales staff . . ." Smith Decl. ¶ 8 (emphasis added). This suggests that Haught did not perform any technical sales duties while in the marketing position. Finally, Leonard states in her declaration that "Mr. Smith and Ms. Haught both also took sales calls and entered corresponding orders into the computer system and <u>Mr. Smith took technical sales calls</u> when a customer needed help and no one from the technical sales department was available to provide that assistance." Leonard Decl. ¶ 9 (emphasis added).

The record, when taken as a whole, suggests that Smith handled aspects of technical sales that were beyond Haught's training and experience. His extra duties required specialized knowledge and skill related to technical sales that Haught had not obtained. Haught's extra duties were related to her previous work as an office manager. These divergences make the work "significantly different," as technical sales arguably require a different level of skill. Moreover, given the fact that neither Smith nor Haught's

salary changed when they were transferred to the marketing department, the company had previously established a pay differential between those who had technical sales knowledge and those who performed duties of an administrative nature. <u>See</u> Haught Tr. at 47 (stating that the only pay raise she received in 2000 was in January, prior to her transfer to the marketing department in April); Smith Tr. at 32 (noting no pay change when transferred to marketing department).

Because this Court finds that Haught's position was not sufficiently similar to Smith's, it must conclude that Haught has failed to establish a <u>prima facie</u> case under the Equal Pay Act. Consequently, no genuine issue of material fact exists with respect to her Equal Pay Act claim, and summary judgment is appropriate.

Haught's claim under West Virginia's Equal Pay for Equal Work Act also fails for the same reasons. West Virginia Code Section 21-5B-3 states in pertinent part: "No employer shall: (a) In any manner discriminate between the sexes in the payment of wages for <u>work of comparable character, the performance of which requires comparable skills</u> . . ." W. Va. Code § 21-5B-3(1)(a)(emphasis added). This Court has found that Smith and Haught's positions were not of comparable character and required different skills. Accordingly, summary judgment is also appropriate for her claim under the Equal Pay for Equal Work Act.

B.  Title VII Disparate Pay Claim

Section 2000e-2(h), the equal pay provision of Title VII, permits an "employer to differentiate upon the basis of sex in determining the amount of the wages or compensation paid or to be paid to employees . . . if such differentiation is authorized by the provisions of § 206(d) of Title 29 [the Equal Pay Act]."  This Court has found that the wage difference between Haught and Smith was justified under the Equal Pay Act.  Thus, it would appear that the plaintiff's Title VII disparate pay claim lacks merit.

Moreover, this Court finds that the case cited by Haught in support of her Title VII claim, Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003), is inapplicable.  In Desert Palace, the Supreme Court of the United States held that a plaintiff is not required to present direct evidence of discrimination in order to obtain a mixed-motive jury instruction under Title VII.  Id. at 92.  Haught asserts that, based on the holding in Desert Palace, the evidence in this case is sufficient to demonstrate that, even if the defendant has a legitimate basis for its conduct, a reasonable jury could find from the discriminatory statements allegedly made by Jay F. Carey ("Carey"), president of the company, that the company's actions were at least in part motivated by bias against women.

However, the defendant correctly notes that Desert Palace addressed only the availability of a mixed-motive jury instruction under Title VII, and did not speak to the evidentiary threshold for

summary judgment motions.  Thus, this Court is not persuaded that the Desert Palace standard is applicable in this case.

Further, the plaintiff has not presented sufficient evidence of disparate pay to survive summary judgment.  As previously noted, the defendant has shown that the salary gap between Smith and Haught was based on differences in skill and responsibility. Haught offers nothing more than colorable evidence to support her discrimination claim -- namely, certain statements made by Carey that might suggest a company bias against women.  The link between Carey's alleged statements and the compensation provided to Haught is speculative and insufficient to create a genuine issue of material fact, given the previous findings of this Court regarding the differences in Smith and Haught's responsibilities. Consequently, Haught's disparate pay claim under Title VII also must fail.

C.  Statutes of Limitation on Title VII and West Virginia Human Rights Act Claims

The defendant asserts that Haught's Title VII claims are time-barred with respect to any events that occurred before June 25, 2001.  Title VII requires a plaintiff to exhaust administrative remedies before an action may be filed in a federal district court. Love v. Pullman Co., 404 U.S. 522 (1972).  Generally, a plaintiff is required to file a claim with the EEOC before pursuing the matter in federal court.  Cornell v. Gen. Electric Plastics, 853 F.

14

Supp. 221, 224 (S.D. W. Va. 1994). In order to preserve federal rights in West Virginia, a "deferral" state, a plaintiff must file a complaint with the EEOC within 300 days of the alleged unlawful employment practice. See Mohasco Corp. v. Silver, 447 U.S. 807 (1980). The plaintiff filed an EEOC complaint on April 23, 2002. Thus, as noted by the defendant, any Title VII claims that arise from events that occurred before June 26, 2001 are time-barred, and any claims based on events that occurred before April 23, 2002 and that were not raised in Haught's EEOC complaint are barred for failure to exhaust administrative remedies.

In addition, the defendant argues that Haught's failure to promote claims brought under the West Virginia Human Rights Act are time-barred as to any events that occurred before July 28, 2001. Upon review, this Court finds that the defendant's assertion is correct. The statute of limitations is two years for claims brought under the West Virginia Human Rights Act ("WVHRA"), W. Va. Code §§ 5-11-1 to -21. Sesay v. Montgomery Ward & Co., 937 F. Supp. 563, 566-67 (S.D. W. Va. 1996). Thus, any failure to promote claims brought pursuant to the WVHRA are time-barred if they refer to events that occurred prior to July 28, 2001.

D. Title VII Failure to Promote Claim

In order to state a viable claim for discriminatory failure to promote, Haught must prove a set of facts enabling this Court to conclude that it is more likely than not that an alleged failure to

promote was motivated by discrimination.  Ennis v. Nat'l Ass'n of
Bus. & Educ. Radio, 53 F.3d 55, 58 (4th Cir. 1995).  Haught must
show by a preponderance of the evidence that:

> (1) she is a member of a protected class; (2) her
> employer had an open position for which she applied or
> sought to apply; (3) she was qualified for the position;
> and (4) she was rejected for the position under
> circumstances giving rise to an inference of unlawful
> discrimination.

Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 959-60 (4th
Cir. 1996).  If she establishes a prima facie case, the burden then
shifts to the defendant to show a non-discriminatory reason for the
failure to promote.  Id. at 960.  If the defendant satisfies this
burden, the burden shifts back to the plaintiff to prove that the
reason provided by the defendant is actually a pretext.  Id.

The defendant argues that the facts of this case do not
support a failure to promote claim.  The defendant asserts that
Haught's claim centers on technical sales positions for which she
did not apply and was not qualified.  The defendant claims that
Haught's self-serving statement that she "would have applied" is
insufficient given her admission that she never expressed an
interest in a technical sales position.  Further, the defendant
claims that she was not qualified for such a position, as she had
only inside sales experience and held no college degree or relevant
technical experience.

In response, Haught argues that, given the defendant's
subjective and secretive hiring practices, her prima facie showing

does not require her to prove that she applied for the subject positions. She claims that, with the exception of the position filled by Kevin Spurill in 2004, the defendant did not post the openings and she was unaware of the vacancies. Further, she claims that there was no formal mechanism to apply for the positions even if she was aware of their availability. In addition, she asserts that she had years of experience in dock sales, and a reasonable jury could find that she was qualified for the subject positions but was denied the opportunity to advance because of her sex. Finally, she argues that evidence exists that her lack of promotion was motivated, at least in part, by a discriminatory bias against women in the workplace, as demonstrated by comments made by Mark Robinson ("Robinson") that "men did not want to talk to women about docks." See Pl.'s Resp., Ex. 5, Leonard Dep. at 129-130.

First, this Court notes that all of Haught's failure to promote claims are time-barred with the exception of: (1) the promotion of Mark Hannah in 2003 and (2) the hiring of Kevin Spurill in 2004. With respect to these claims, this Court agrees with the defendant that Haught has failed to prove that she would have applied for these jobs were it not for the defendant's discriminatory practices. "While Title VII does not require a plaintiff to apply for a job when to do so would be a futile gesture, a plaintiff claiming he was deterred from applying for a job by his employer's discriminatory practices has the burden of

proving that he would have applied for the job had it not been for those practices." Brown v. McLean, 159 F.3d 898, 903 (4th Cir. 1998)(citing Int'l Bhd. of Teamsters v. United States, 431 U.S. 324 (1977)). This is "not always [an] easy burden." Teamsters, 431 U.S. at 368. Further, merely showing that the company had a discriminatory policy is insufficient -- a court cannot assume, based on that fact, that a non-applicant desired a specific job or possessed the requisite qualifications. Id. at 369.

In this case, Haught relies heavily on the fact that the defendant did not post vacancies. However, Haught admits during her deposition that she never expressed an interest in a technical sales position to her supervisor until after Spurill was hired in 2004. Haught Tr. at 129 (stating "I didn't feel I had that avenue."). Haught has provided no evidence, outside of her own statements, that she was interested in these positions at the time they were filled. Further, the record reflects that Haught was promoted three times during her tenure without applying or interviewing for positions. Finally, the evidence suggests that Haught was not qualified for the technical sales positions, given her lack of experience in that area. Haught relies on the fact that she held fifteen years of inside sales experience; however, this Court is unconvinced that this experience was sufficient to make her the most qualified candidate for a technical sales position. She held no college degree and had no technical sales

experience at the time the positions were filled.  Further, the positions were filled by individuals with relevant education or experience.  Consequently, regardless of whether the Robinson's statements suggest that the company held a discriminatory policy, this Court must find that summary judgment is appropriate with respect to the plaintiff's claim of failure to promote.

E.  <u>Title VII Retaliation Claim</u>

In order to establish a <u>prima facie</u> case of retaliation, a plaintiff must demonstrate that: (1) she engaged in a protected activity; (2) her employer took an adverse employment action against her; and (3) a causal link existed between the protected activity and the adverse employment action.  <u>Laughlin v. Metro. Wash. Airports Auth.</u>, 149 F.3d 253, 258 (4th Cir. 1998).

Haught asserts that her retaliation claim survives because the informal complaints she made of unequal pay qualify as protected activity, and they were linked to a reduction in her duties and her eventual termination and replacement by Doran Wickham ("Wickham"). However, the weight of the evidence defeats her claim: (1) there is no evidence that Haught ever complained of gender bias –– her complaint involved promised pay raises, and both men and women were denied the pay raises they had been promised; (2) there is no evidence that Haught suffered an adverse employment action due to her complaints, as she did not suffer any loss of salary or benefits; (3) there is no linkage between Haught's complaints and

any alleged adverse action, because Smith did not complain and he received the same treatment that she did after the relocation; and (4) Haught's layoff was part of a division-wide reduction in force that included four others, and Wickham's retention can be explained by his seniority. Finally, the defendant's decision to rehire Haught in May 2004 undercuts her claim of retaliation.

For these reasons, this Court finds that Haught has failed to make a prima facie case to support her Title VII retaliation claim. Thus, summary judgment as to this claim is also appropriate.

F.    Hostile Work Environment Claim

The defendant seeks summary judgment with respect to Haught's claim of sexual harassment on the grounds that Haught cannot prove the existence of severe and pervasive conduct that unreasonably altered her work environment. The defendant alleges that Haught's entire sexual harassment claim stems from two isolated incidents -- the use of vulgar language by her supervisor, Mark Robinson ("Robinson"), which was directed at her, and suggestive comments allegedly made by a coworker, Phyllis Parissi ("Parissi"), regarding a sexual relationship Parissi had with her supervisor. The defendant further claims that Haught did not avail herself of the company's written policy prohibiting harassment in the workplace until April 2002, and then refused to participate in the company investigation into her claim, deferring instead to the EEOC investigation.

Haught did not respond to this issue in her memorandum. However, this Court will proceed to examine the defendant's argument on the merits. <u>See</u> <u>Custer v. Pan Am. Life Ins. Co.</u>, 12 F.3d 410, 416 (4th Cir. 1993)("Although the failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion, the moving party must still show that the uncontroverted facts entitle the party to 'a judgment as a matter of law.'").

"When the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." <u>Harris v. Forklift Sys.</u>, 510 U.S. 17, 21 (1993)(internal citations omitted). In order to have a successful claim, a plaintiff must demonstrate that "the environment would reasonably be perceived, and is perceived, as hostile or abusive . . ." <u>Id.</u> at 22. Courts must consider all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." <u>Id.</u> "'[S]imple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of

employment.'" <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 788 (1998)(internal citations omitted).

In this case, Haught has failed to demonstrate that the actions by her supervisor and coworker were sufficiently "severe and pervasive" to support a sexual harassment claim. Her supervisor's alleged comment that she was a "f**king wimp" appears to be an isolated incident that constitutes simple teasing or a mere offensive utterance. Haught has made no further showing that the statement created a hostile work environment. In addition, the sexually suggestive comments made by Parissi do not rise to a "severe and pervasive" level. Haught has made no showing that she subjectively found the environment hostile. In fact, it appears that Haught engaged in similar conduct by baking a sexually explicit cake. Further, Haught did not complain about Parissi's conduct until April 23, 2003, and she alleges that some of Parissi's inappropriate comments were made as early as 1997 or 1998 and continued through 2002. Haught also failed to make use of the defendant's sexual harassment procedure, a copy of which she admits was provided to all employees, in order to put the defendant on notice of Parissi's conduct.

Given these circumstances, this Court finds that Haught has failed to make the necessary <u>prima facie</u> showing with respect to her hostile environment claim. Thus, summary judgment is appropriate.

## VI.  Conclusion

Because the defendant has set forth sufficient evidence to demonstrate to this Court that there is an absence of a genuine issue of material fact with respect to each of the claims of plaintiff Sharon Haught, the defendant's motion for summary judgment as to plaintiff Sharon Haught is hereby GRANTED pursuant to Rule 56(e).  All claims of plaintiff Sharon Haught are hereby DISMISSED WITH PREJUDICE.  In addition, given that this Court has granted summary judgment with respect to the claims of both Darlene Kemp and Sharon Haught, all other pending motions in this action, with the exception of Document 78, the Defendant's Motion to Strike Plaintiff Leonard's Declaration and EEOC Charge, and Document 140, Application for Attorney's Fees, are hereby DENIED AS MOOT.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit copies of this memorandum opinion and order to counsel of record herein.

DATED:    June 15, 2005


/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE