IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

SHARON HAUGHT, DARLENE KEMP and
JOYCE LEONARD,

     Plaintiffs,

v.                       Civil Action No. 5:03CV109
                                 (STAMP)
THE LOUIS BERKMAN, LLC, WEST VIRGINIA
d/b/a FOLLANSBEE STEEL,

     Defendant.

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT'S MOTION TO STRIKE PLAINTIFF
JOYCE LEONARD'S DECLARATION AND EEOC CHARGE AND
GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
REGARDING CLAIMS OF JOYCE LEONARD**

I.  Procedural History

On July 28, 2003, the plaintiffs filed a complaint in this
Court asserting claims against the defendant for unlawful sex
discrimination, harassment, and retaliation, in violation of Title
VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000-e, et seq.,
the Equal Pay Act, 29 U.S.C. § 206(d), and related West Virginia
statutes. On August 19, 2004, the defendant filed an answer to the
complaint. The defendant later filed an amended answer and
counterclaim against plaintiff, Joyce Leonard ("Leonard"). This
counterclaim includes three counts: misappropriation of trade
secrets (Count One), breach of confidentiality (Count Two), and
breach of the duty to act only as authorized (Count Three).
Leonard filed a reply asserting counterclaims that include

discrimination and retaliation (Count One) and abuse of process (Count Two).

On September 13, 2004, the defendant filed a motion for summary judgment with respect to the claims relating to Leonard. Leonard responded in opposition to this motion and the defendant replied. On October 21, 2004, the defendant filed a motion to strike Leonard's declaration and Equal Employment Opportunity Commission ("EEOC") charge, to which Leonard responded and the defendant replied.

The defendant's motions for summary judgment and to strike Leonard's declaration and EEOC charge are now fully briefed and ripe for review. This Court also heard oral argument on defendants' motion for summary judgment on November 15, 2004. After considering the parties' memoranda, oral argument as to the summary judgment motion and the applicable law, this Court finds that the defendant's motion to strike Leonard's declaration and EEOC charge should be denied and the defendant's motion for summary judgment with respect to Leonard's claims should be granted in part and denied in part.

## II. Facts

This action arises from the plaintiffs' employment relationship with the defendant, The Louis Berkman, LLC, West Virginia d/b/a Follansbee Steel ("Follansbee Steel"). The plaintiffs contend that the defendant has maintained a policy and

practice of discrimination against its female employees. Further, the plaintiffs assert that the defendant has subjected the plaintiffs to unlawful retaliation, including termination.

In the complaint, Leonard alleges sexual harassment, failure to promote, discriminatory compensation practices, and retaliation. She seeks compensatory damages, punitive damages, prejudgment interest, and attorney's fees and costs.

### III.  Undisputed Facts

Jay Carey ("Carey") hired Leonard to work as a secretary in Follansbee Steel's Terne Division in 1991. At that time, Carey was the senior executive for the Terne Division. Carey was later promoted to the position of President, making him responsible for managing the operations of both the Terne and Sheet Metal Specialties Divisions. Carey served as the senior executive of the company and answered only to its owner, Louis Berkman ("Berkman"). In June 1996, Carey promoted Leonard to the position of Administrative Assistant. He promoted Leonard again in April 2000 to the position of Director of Marketing for the Sheet Metal Division.  In August 2000, he gave Leonard the additional responsibility of managing sales for the Sheet Metal Division. Throughout her employment, Carey served as Leonard's immediate supervisor.

In December 2001, Leonard's department moved to the Sheet Metal building. She remained in the Terne building and became the

Director of Marketing for the Terne Division. The defendant eliminated Leonard's position on July 18, 2003 when it began outsourcing the marketing functions for the Terne Division.

## IV. Applicable Law

A. Motion to Strike

Federal Rule of Civil Procedure 12(f) states in relevant part:

> Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

The standard upon which a motion to strike is measured places a substantial burden on the moving party. "A motion to strike is a drastic remedy which is disfavored by the courts and infrequently granted." Clark v. Milam, 152 F.R.D. 66, 70 (S.D. W. Va. 1993). Generally, such motions are denied "unless the allegations attacked have no possible relation to the controversy and may prejudice the other party." Steuart Inv. Co. v. Bauer Dredging Constr. Co., 323 F. Supp. 907, 909 (D. Md. 1971). Moreover, "where there is any question of fact or any substantial question of law, the court should refrain from acting until some later time when these issues can be more appropriately dealt with." United States v. Fairchild Industries, Inc., 766 F. Supp. 405 (D. Md. 1991).

B.    Motion for Summary Judgment

Under Federal Rule of Civil Procedure 56(c), summary judgment
is appropriate if "the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the
affidavits, if any, show that there is no genuine issue as to any
material fact and that the moving party is entitled to a judgment
as a matter of law."  The party seeking summary judgment bears the
initial burden of showing the absence of any genuine issues of
material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23
(1986).  "The burden then shifts to the nonmoving party to come
forward with facts sufficient to create a triable issue of fact."
Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir.
1991), cert. denied, 502 U.S. 1095 (1992)(citing Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).  However, as the
United States Supreme Court noted in Anderson, "Rule 56(e) itself
provides that a party opposing a properly supported motion for
summary judgment may not rest upon the mere allegations or denials
of his pleading, but . . . must set forth specific facts showing
that there is a genuine issue for trial."  Id. at 256.  "The
inquiry performed is the threshold inquiry of determining whether
there is the need for a trial -- whether, in other words, there are
any genuine factual issues that properly can be resolved only by a
finder of fact because they may reasonably be resolved in favor of
either party."  Id. at 250; see also Charbonnages de France v.

5

Smith, 597 F.2d 406, 414 (4th Cir. 1979)(Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

In Celotex, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. See Oksanen v. Page Mem'l Hosp., 912 F.2d 73, 78 (4th Cir. 1990), cert. denied, 502 U.S. 1074 (1992). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## IV.  Discussion

A.  Defendant's Motion to Strike Leonard's Declaration and EEOC Charge

The defendant argues that Leonard's declaration and EEOC charge must be stricken because the charges contained therein contradict her answers to interrogatories and her deposition

6

testimony.  In addition, the defendant argues that these documents contain inadmissible conclusory statements, opinions, and hearsay. The defendant contends that these documents are inadmissible at trial and cannot be used by this Court in deciding the defendant's motion for summary judgment.  For these reasons, the defendant argues that they should be stricken from the record.

In response, Leonard argues that her EEOC questionnaire does not contradict her interrogatory answers[1] and deposition testimony -- rather, she asserts that her earlier responses demonstrated an innocent failure to recall.  Further, Leonard argues that she incorporated by reference the EEOC questionnaire into her October 11, 2004 declaration.  Finally, she argues that the operative portions of the EEOC questionnaire are obviously the product of her personal knowledge.

First, this Court will address the EEOC questionnaire.  The defendant argues that the allegations Leonard makes in her EEOC questionnaire contradict her deposition testimony because she failed to mention numerous incidents of alleged outrageous conduct during her deposition that were cited in her EEOC questionnaire.

---

[1] Upon reviewing the record, this Court notes that Leonard cites several incidents of harassment by Carey in her responses to the defendant's interrogatories during the discovery process.  The defendant was, therefore, on notice as to all of the allegations made in that document.

This Court does not find the defendant's argument persuasive.[2]  A reading of significant portions of the deposition transcript shows that defense counsel changed topics numerous times during the deposition, directing Leonard's attention to different incidents. While this Court offers no criticism, as it is appropriate to be thorough during a deposition, there is no evidence that Leonard was given the opportunity to broadly address all of the incidents described in her EEOC charge.

Further, even if she was given the opportunity for full disclosure, this Court does not find the holding in <u>Jackson v. Consolidation Coal Co.</u>, 1994 U.S. App. LEXIS 5190 (4th Cir. March 22, 2004), to be applicable.  First of all, this Court notes that <u>Jackson</u> is an unpublished opinion that is not binding on this Court.  More importantly, the facts of this case are distinct.  In <u>Jackson</u>, the court struck statements from the record that the plaintiff provided in an affidavit filed in direct response to the defendant's motion for summary judgment.  Thus, the Court concluded that the affidavit was a "sham" filed in order to save the action from summary judgment.  In the present action, the EEOC questionnaire was filed before this action commenced.  While the defendant insists that this timing is irrelevant, this Court does not agree.  The statements made in Leonard's EEOC complaint were

---

[2] Because the parties only provided the Court with excerpts from Leonard's deposition testimony, this Court must base its determination on the information provided.

not the self-serving responses of a plaintiff facing summary judgment. They were made independent of any pending civil litigation. For this reason, this Court finds the action taken by the Fourth Circuit in Jackson to be inappropriate in this case.

The defendant also implies that Leonard's submission of her EEOC questionnaire as an exhibit at the end of her deposition testimony was inappropriate and prejudicial. However, this Court notes that the defendant made no attempt to ask this Court to enlarge the time for deposition so that defense counsel could question her regarding this document. Thus, this Court finds no prejudice to the defendant.

Further, the defendant argues that Leonard's EEOC questionnaire is inadmissible under Federal Rule of Civil Procedure 56(e). Rule 56(e) states that evidence may constitute an affidavit sufficient to create a genuine issue of material fact if it: (1) is based upon personal knowledge; (2) sets forth facts that would be admissible in evidence; and (3) shows the affiant is competent to the matters stated therein. See Fed. R. Civ. P. 56(e); Ford v. Wilson, 90 F.3d 245, 247 (7th Cir. 1996); Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995). In Ford v. Wilson, the Seventh Circuit found it unimportant that a verified complaint was not called an "affidavit" -- the court found that such documents are still admissible if they comply with Rule 56(e). 90 F.3d at 247.

The defendant argues that the EEOC questionnaire contains unsworn statements that are hearsay, conclusory, speculative, and that are not based on Leonard's personal knowledge. For these reasons, the defendant argues that the questionnaire does not comply with the evidentiary standards of Rule 56(e). After reviewing the EEOC questionnaire, this Court is satisfied that portions of the document contain admissible information that is based upon Leonard's personal knowledge. For example, the questionnaire is replete with references to inappropriate statements Carey made to Leonard personally. These statements are neither speculative nor conclusory. Further, in her October 11, 2004 declaration, Leonard swears under penalty of perjury that the facts contained in the EEOC questionnaire are true and accurate. This is sufficient to create a verified complaint. See Schroeder, 55 F.3d at 460 n.10 (finding valid verified complaint based on statement made under penalty of perjury that the contents were "true and correct"). Thus, because portions of the document meet the requirements of Rule 56, it should not be stricken in its entirety. An evidentiary hearing is appropriate to determine whether certain statements contained within it are inadmissible hearsay, conclusions, or speculation.

Accordingly, this Court finds that the defendant's motion to strike Leonard's EEOC questionnaire must be denied. This Court will schedule an evidentiary hearing at a later date to decide

questions of hearsay, speculation, and personal knowledge regarding statements within the document.

The Court next turns to Leonard's October 11, 2004 declaration. This document was filed in response to the defendant's motion for summary judgment and may be construed as a counter-affidavit pursuant to Rule 56(e). <u>Jeffries v. Block</u>, 940 F. Supp. 1509, 1512 n.1 (C.D. Cal. 1996) (citing <u>Shroeder</u>, 55. F.3d at 460). Again, this Court does not find that the statements made in the declaration should be stricken as contradictory to Leonard's deposition testimony. While the statements provide supplemental information, they do not serve as to the crux of Leonard's harassment claims and thus do not implicate the reasoning in <u>Jackson</u>. Consequently, this Court finds that the defendant's motion to strike Leonard's declaration should also be denied.

B.    <u>Defendant's Motion for Summary Judgment</u>

In its motion for summary judgment, the defendant makes the following allegations: (1) several of Leonard's claims are barred either for failure to exhaust administrative remedies or due to the expiration of the applicable statutes of limitation; (2) Leonard's sexual harassment claim must fail because she cannot demonstrate the existence of severe and pervasive conduct that unreasonably altered her work environment, because she failed to complain about the conduct to the company in-house counsel, and because she successfully lobbied to remain under the alleged harasser's

supervision; (3) Leonard's failure to promote claim must fail because she was promoted three times during her twelve-year tenure, with one of these promotions providing an $8,000.00 per-year raise, because she took no steps to inform the company that she was interested in the positions for which she was overlooked, and because she was not qualified for any of these positions; (4) Leonard's equal pay claims must fail because she cannot cite any similarly situated male employees who were paid at a higher rate; and (5) Leonard's retaliation claims must fail because the changes in her job responsibilities occurred before she filed a charge with the EEOC and her layoff occurred over fifteen months after she filed the charge and also affected two males.

In her response, Leonard first notes her withdrawal of the failure to promote claims under Title VII and her claims under the Equal Pay Act. Thus, this Court will grant the defendant's motion for summary judgment with respect to those claims. With respect to her remaining claims, Leonard argues: (1) that she has presented a prima facie case of sexual harassment, and the defendant has failed to sufficiently prove the existence of an affirmative defense; (2) her Title VII claim of disparate pay survives because she has provided sufficient evidence that she was not given a raise when promoted to the positions of Director of Marketing and Director of Marketing/Sales Manager, and consequently she was managing male subordinates who received higher compensation than she did, and

because other male managers were compensated better than she was; and (3) her retaliation claim should survive because the protected activity in this case was not necessarily the filing of the EEOC complaint, but also could have been her repeated objections to Carey's conduct, her complaints regarding her compensation, her complaints regarding the dispersion of her pay increase, her complaints regarding the treatment of female subordinates, and her complaints regarding the restructuring of the sales/marketing department.

1.    Statute of Limitations and Exhaustion of Administrative Remedies

Title VII requires a plaintiff to exhaust administrative remedies before an action may be filed in a federal district court. Love v. Pullman Co., 404 U.S. 522 (1972). Generally, a plaintiff is required to file a claim with the EEOC before pursuing the matter in federal court. Cornell v. Gen. Electric Plastics, 853 F. Supp. 221, 224 (S.D. W. Va. 1994). In order to preserve federal rights in West Virginia, a "deferral" state, a plaintiff must file a complaint with the EEOC within 300 days of the alleged unlawful employment practice. See Mohasco Corp. v. Silver, 447 U.S. 807 (1980). Leonard filed an EEOC complaint on April 23, 2002 in which she raised claims of sexual harassment.

The defendant argues that Leonard has not established the time frame for many of the alleged incidents of sexual harassment. For

13

this reason, the defendant asserts that these claims fail as a matter of law. However, the Supreme Court of the United States held in <u>Amtrak v. Morgan</u>, 536 U.S. 101 (2002):

> A hostile work environment claim is comprised of a series of separate acts that collectively constitute one "unlawful employment practice." 42 U.S.C. § 2000e-5(e)(1). The timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened. It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

<u>Id.</u> at 117. Thus, given the fact that Leonard filed a timely EEOC complaint alleging a hostile work environment, all of the allegations related to that claim may be considered by this Court, regardless of the fact that they fall outside of the statutory period. For this reason, this Court finds the defendant's assertion of untimeliness to be without merit.

The defendant also argues that Leonard's Title VII disparate treatment claim is time-barred because the discrimination occurred in November 2000, more than 300 days prior to the filing of her EEOC charge on April 23, 2002. In her response, Leonard clarifies that her claims of disparate treatment stem from the fact that she was promoted to the positions of Director of Marketing in April 2000 and Marketing/Sales Manager in August 2000 without receiving a pay increase, which resulted in a situation where male

subordinates received greater compensation than she did. This argument does not assist Leonard in proving that her claim is timely. In order to fall within the statutory period, the conduct must have occurred no later than June 25, 2001. Because the alleged disparate treatment occurred prior to that date, Leonard's claim must fail.

    2. <u>Hostile Work Environment</u>

In order to establish a <u>prima facie</u> hostile work environment claim, a plaintiff must show: "(1) the subject conduct was unwelcome; (2) it was based on the sex of the plaintiff; (3) it was sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) it was imputable on some factual basis to the employer." <u>Spicer v. Virginia</u>, 66 F.3d 705, 710 (4th Cir. 1995)(citing <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 20 (1993)). The plaintiff must demonstrate that the workplace "was both subjectively and objectively hostile." <u>Gunten v. Maryland</u>, 243 F.3d 858, 870 (4th Cir. 2001).

The defendant first argues that Leonard has failed to show that Carey's alleged conduct was unwelcome, severe, or pervasive. The defendant asserts that there is no evidence that Carey's alleged conduct occurred frequently, was physically threatening, or hampered Leonard's work performance.

In addition, the defendant argues that Leonard failed to report Carey's conduct. The defendant contends that Leonard at no time prior to the filing of her EEOC charge complained of sexual harassment, even though she was undisputedly aware of the defendant's sexual harassment policies. Further, the defendant notes that Leonard received a personal invitation from the defendant's in-house counsel to address concerns regarding anti-harassment policies. The defendant also addresses the fact that Leonard was given the opportunity to work under a different supervisor at a different location and chose to remain under Carey's supervision. Finally, the defendant asserts that Leonard has failed to prove that the actions of Scott Stevens and Jim Looman created a hostile work environment.

After reviewing the record, this Court finds that a genuine issue of material fact remains as to whether Leonard found Carey's actions unwelcome. The plaintiff's credibility on this issue is appropriately left to a jury. Connor v. Schrader-Bridgeport Int'l, Inc., 227 F.3d 179, 199-200 (4th Cir. 2000). This Court is satisfied that a reasonable jury could conclude that Leonard objected to Carey's conduct but chose to remain under his supervision for reasons related to the restructuring of her division.

"[W]hether the harassment was sufficiently severe or pervasive to create a hostile work environment is 'quintessentially a

question of fact' for the jury, as is the issue of the plaintiff's credibility." Connor, 227 F.3d at 199-200 (quoting Smith v. First Union Nat'l Bank, 202 F.3d 234, 243 (4th Cir. 2000)). In determining whether conduct is sufficiently pervasive to permit a reasonable jury to find a hostile work environment, a court must consider: (1) its frequency; (2) its severity; (3) whether it is physically threatening or humiliating, or instead constitutes mere offensive utterances; (4) whether it unreasonably interferes with the plaintiff's work performance; and (5) whether it resulted in psychological harm. Harris, 510 U.S. at 21 (1993); Connor, 227 F.3d at 193. After a thorough review of the record, this Court is satisfied that a reasonable jury could conclude that Carey's conduct was sufficiently severe and pervasive. Leonard's allegations involve conduct that extends over a period of years and is of a frequent and graphic nature. Leonard has also asserted that Carey's actions were humiliating and psychologically harmful, and caused her on at least one occasion to take time off from work.

The final factor to be considered is whether Carey's alleged conduct is imputable to Follansbee Steel. "Employers are not automatically liable for acts of harassment levied by supervisors against subordinates. Rather, there must be some basis in law for imputing the acts of the supervisor to the employer." Spriggs v. Diamond Auto Glass, 242 F.3d 179, 186 (4th Cir. 2001)(citations omitted). Employer liability is generally established in one of

17

three ways: (1) by proving that the acts were committed by a person of high rank in the company who may be considered the organization's "proxy;" (2) by proving that the plaintiff suffered a "tangible employment action;" and (3) by proving that the plaintiff suffered an actionable hostile work environment at the hands of her immediate supervisor. Faragher v. City of Boca Raton, 524 U.S. 775, 789, 807 (1998); Burlington Indus. v. Ellerth, 524 U.S. 742, 765 (1998).

The plaintiff argues that this Court may impute liability to the defendant because she suffered a "tangible employment action" -- a reassignment to the position of Director of Marketing for the Terne Division. The Supreme Court of the United States has held that a tangible employment action occurs when "a significant change in employment status" is created, "such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Ellerth, 524 U.S. at 761. Leonard claims her position after reassignment was significantly different from her previous position as Director of Marketing/Sales Manager for the Sheet Metal Division, and that Carey's actions in reassigning her were further efforts to harass her.

In evaluating this claim, this Court finds that a genuine issue of material fact exists as to whether Leonard's reassignment significantly diminished her responsibilities. The defendant notes

18

that Leonard's reassignment gave her supervisory responsibility for one person -- Bill Duffy. However, in her previous position she supervised as many as eight employees. Thus, a genuine issue of material fact remains with respect to whether Leonard's reassignment placed her in a position that was significantly different from her work as Marketing/Sales Manager in the Sheet Metal Division.

Further, a genuine issue of material fact also exists as to whether this reassignment was motivated by discrimination. The deposition testimony of Robert F. Schultz and Scott W. Stevens supports Leonard's assertion that Carey alone controlled the terms of Leonard's reassignment, and that a great deal of "miscommunication" occurred between Carey and Leonard regarding her new position, which Carey originally structured as a demotion but later revised to allow Leonard to receive her previous title and rate of compensation. See Leonard's Opp'n Mot. Summ. J., Schultz Dep., Ex. 11, at 38-45; Stevens Dep., Ex. 12, at 97-105. A reasonable jury could conclude from the facts that Carey held a discriminatory motive when conducting the related exchanges and when taking the action of reassigning Leonard. Thus, this Court must conclude that Leonard's theory of liability based on "tangible employment action" survives summary judgment.

Leonard also argues that the defendant is directly liable pursuant to the "proxy" or "alter ego" theory. Leonard claims that

Carey's position as president of the company made him the defendant's proxy and, therefore, his actions can be directly imputed to the defendant.

In Faragher v. City of Boca Raton, 524 U.S. 775 (1998), the Supreme Court recognized this principle of liability, citing case law finding that "the president of the corporate employer . . . was indisputably within that class of an employer organization's officials who may be treated as the organization's proxy." Id. at 789 (citing Harris, 510 U.S. at 19); Burns v. McGregor Electronic Indus., Inc., 955 F.2d 559, 564 (8th Cir. 1992)). In Sauers v. Salt Lake County, 1 F.3d 1122 (1993), the United States Court of Appeals for the Tenth Circuit further stated:

> We agree with the Fourth Circuit that "an individual qualifies as an 'employer' under Title VII if he or she serves in a supervisory position and exercises significant control over the plaintiff's hiring, firing or conditions of employment." Paroline v. Unisys Corp., 879 F.2d 100, 104 (4th Cir. 1989), aff'd in pertinent part, 900 F.2d 27 (4th Cir. 1990)(en banc). In such a situation, the individual operates as the alter ego of the employer, and the employer is liable for the unlawful employment practices of the individual without regard to whether the employer knew of the individual's conduct. See 29 C.F.R. 1604.11(c).

Id. at 1125. Based on a review of the case law, this Court is satisfied that the alter ego principle has been established and that its underpinnings are supported by Fourth Circuit law. Further, this Court finds that a genuine issue of material fact remains as to whether Carey served as the defendant's "alter ego" as the president of Follansbee Steel. The statements made by

20

Berkman, owner of the company, during his deposition are rather telling: "I put a man in charge, and it's up to him to see the company operates properly and treats the people right." Leonard's Opp'n Mot. Summ. J., Ex. 7, at 18. On these grounds, this Court finds that Leonard's theory of liability based on "alter ego" principles survives summary judgment.

Based on the above findings, this Court finds that Leonard has presented a _prima facie_ case of hostile work environment. Follansbee Steel argues, however, that this claim should not survive because Follansbee Steel has carried its burden of proof on its affirmative defense. Follansbee Steel argues that it has demonstrated that it exercised reasonable care to prevent and correct any sexually harassing behavior. Further, it argues that Leonard unreasonably failed to take advantage of preventative or corrective opportunities.

Leonard counters that this affirmative defense is not available in response to the theories of liability she asserts. Case law supports this argument. In _Johnson v. West_, 218 F.3d 725 (7th Cir. 2000), the Seventh Circuit provided the following analysis:

> Vicarious liability automatically applies when the harassing supervisor is either (1) "indisputably within that class of an employer organization's officials who may be treated as the organization's proxy," _Faragher_, 524 U.S. at 789, or (2) "when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." _Id._ at 808. _Absent either of these situations_, however, an

employer may avoid vicarious liability by showing "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Ellerth, 524 U.S. at 765.

Id. at 730 (emphasis added). Further, the Supreme Court noted in Ellerth that "[n]o affirmative defense is available . . . when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." 524 U.S. at 765. Because Follansbee Steel's affirmative defense is unavailable with respect to Leonard's claims of imputed liability, this Court will not examine the merits of these arguments.

Given the above findings, this Court finds that genuine issues of material fact remain with respect to Leonard's hostile work environment claim.[3] Thus, the defendant's motion for summary judgment is denied as to this claim.

### 3. Retaliation

Leonard's final claim is retaliation. In order to establish a prima facie case of retaliation, Leonard must prove: (1) that she engaged in protected activity; (2) that she suffered an adverse employment action; and (3) that there was a causal link between the

---

[3] As recognized by the defendant, Leonard's allegations that Scott Stevens and Jim Looman contributed to the hostile work environment survive as well, based on the "totality of the circumstances" test articulated in Harris v. Forklift Sys., 510 U.S. 17, 23 (1993).

22

protected activity and the adverse employment action.  <u>Laughlin v.</u>

<u>Metro. Washington Airports</u>, 149 F.3d 253, 258 (4th Cir. 1998).

> Protected activities fall into two distinct categories:
> participation or opposition.  <u>See</u> 42 U.S.C. § 2000e-3(a)
> (West 1994).  An employer may not retaliate against an
> employee for participating in an ongoing investigation or
> proceeding under Title VII, nor may the employer take
> adverse employment action against an employee for
> opposing discriminatory practices in the workplace.

<u>Id.</u> at 259.  "To qualify as opposition activity an employee need

not engage in the formal process of adjudicating a discrimination

claim.   Opposition activity encompasses utilizing informal

grievance procedures as well as staging informal protests and

voicing one's opinions in order to bring attention to an employer's

discriminatory activities."  <u>Id.</u>

Leonard argues that she engaged in a number of protected

activities: her repeated objections to Carey's conduct, her

complaints regarding her compensation, her complaints regarding the

dispersion of her pay increase, her complaints regarding the

treatment of female subordinates, and her complaints regarding the

restructuring of the sales/marketing department.   The defendant

counters that these actions amount to general complaints and do not

implicate Title VII.

This Court finds, upon reviewing the record, that a reasonable

jury could find that Leonard's complaints regarding Carey's

conduct, her compensation, and the treatment of female subordinates

are protected activities which implicate Title VII, given their

gender-specific nature. Thus, this Court finds that the first element of her retaliation claim is sufficient to withstand summary judgment.

This Court will next analyze whether Leonard has presented evidence of an adverse employment action. "Adverse employment actions include any retaliatory act or harassment if that act or harassment results in an adverse effect on the terms, conditions, or benefits of employment." Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 188 (4th Cir. 2004). First, this Court finds that Leonard has not demonstrated that she suffered an adverse employment action as a result of the relocation of the sales/marketing department. While she claims this move was designed to harass her, this is based on speculation and there is no conclusive evidence to support it.

This Court next finds that Leonard's reassignment could be construed as an adverse employment action, based on the evidence of a significant change in her level of responsibility. However, Leonard has failed to connect this employment action with any protected activity. While evidence shows that Carey's actions in reassigning her could have been harassment, Leonard has failed to show that these actions were taken in retaliation for any conduct on her part other than her general complaint regarding the movement of the sales/marketing department. For this reason, Leonard has failed to make a prima facie case of retaliation under Title VII,

and the defendant's motion for summary judgment as to this claim must be granted.

Leonard's claim also fails under West Virginia law. The elements of retaliation under the West Virginia Human Rights Act are substantially similar -- a plaintiff must demonstrate: (1) that she engaged in protected activity; (2) that her employer was aware of the protected activities; (3) that she was subsequently discharged; and, absent other evidence tending to establish a retaliatory motivation, (4) that her discharge followed her protected activities within such period of time that the court can infer retaliatory motivation. Frank's Shoe Store v. West Va. Human Rights Comm'n, 179 W. Va. 53, 61 (1986). Leonard has failed to prove that her discharge in 2003 was in temporal proximity to her complaints, which were made more than a year earlier. While she attempts to rely on the existence of "other evidence" to establish a retaliatory motivation, this Court is unpersuaded. Follansbee Steel justifies its termination of her position based on its decision to outsource marketing activities, and notes that this lay-off also affected two other male employees. Given this evidence, this Court cannot conclude that she was discharged in retaliation for her complaints. Thus, Leonard's claim of retaliation under the West Virginia Human Rights Act must also fail.

V. <u>Conclusion</u>

For the reasons stated above, the defendant's motion to strike Leonard's declaration and EEOC charge is hereby DENIED. Because the defendant has set forth sufficient evidence to demonstrate to this Court that there is an absence of a genuine issue of material fact with respect to Leonard's failure to promote, Equal Pay Act, disparate treatment, and retaliation claims, this Court, pursuant to Rule 56(e), the defendant's motion for summary judgment is hereby GRANTED IN PART and DENIED IN PART. The defendant's motion is DENIED as to Leonard's hostile work environment claim.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit copies of this memorandum opinion and order to counsel of record herein.

DATED: July 5, 2005

<u>/s/ Frederick P. Stamp, Jr.</u>
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE