IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

SHARON HAUGHT, DARLENE KEMP and
JOYCE LEONARD,

       Plaintiffs,

v.                                 Civil Action No. 5:03CV109
                                              (STAMP)

THE LOUIS BERKMAN LLC, WEST VIRGINIA
d/b/a FOLLANSBEE STEEL,

       Defendant.


**MEMORANDUM OPINION AND ORDER
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
ON DEFENDANT'S COUNTERCLAIM AND
GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
ON DEFENDANT'S COUNTERCLAIM**


I.  Procedural History

On July 28, 2003, the plaintiffs, Sharon Haught, Darlene Kemp and Joyce Leonard ("Leonard"), filed a complaint in this Court alleging unlawful sex discrimination, harassment and retaliation pursuant to the Civil Rights Act of 1964, 42 U.S.C. § 2000-e, et seq., the Equal Pay Act, 29 U.S.C. § 206(d), and related West Virginia statutes. Plaintiffs seek damages for lost wages and benefits, emotional distress, punitive damages, prejudgment interest and attorney's fees and costs.[1]

On August 19, 2004, defendant, The Louis Berkman LLC, West Virginia d/b/a Follansbee Steel ("Follansbee Steel"), filed an

_____

[1]This Court has granted summary judgment regarding the claims of plaintiffs, Sharon Haught and Darlene Kemp.

answer to the complaint. With the approval of this Court, defendant Follansbee Steel later filed an amended answer and counterclaim against plaintiff Leonard. This counterclaim includes three counts: misappropriation of trade secrets (Count I), breach of confidentiality (Count II), and breach of the duty to act only as authorized (Count III). Leonard filed a reply to defendant Follansbee Steel's counterclaim asserting a counterclaim that includes discrimination and retaliation (Count I) and abuse of process (Count II).[2]

On October 7, 2005, defendant Follansbee Steel filed a motion for summary judgment on defendant's counterclaim. The plaintiff responded to this motion and defendant Follansbee Steel replied. Plaintiff Leonard filed a motion for summary judgment on defendant Follansbee Steel's counterclaim, to which the defendant responded and plaintiff Leonard replied. These motions are now fully briefed and ripe for review. After reviewing the parties' memoranda and the applicable law, this Court finds that defendant Follansbee Steel's motion for summary judgment on defendant's counterclaim should be granted in part and denied in part and plaintiff Leonard's motion for summary judgment on defendant's counterclaim should be denied.

---

[2]This Court has granted summary judgment to defendant Follansbee Steel on plaintiff Leonard's counterclaim.

## II.  <u>Facts</u>

This action arises from the plaintiff Leonard's employment relationship with the defendant Follansbee Steel.  Follansbee Steel is comprised of several entities including Terne and Sheet Metal Specialty.

Jay Carey ("Carey") hired Leonard to work as a secretary in Follansbee Steel's Terne Division in 1991.  On or about December 4, 1992, plaintiff Leonard signed a confidentiality agreement titled: "Invention and Confidentiality Agreement."  (Def.'s Mot. Summ. J. at 6; Def.'s Reply Ex. Stevens Aff. at 6.)  In 1994, Follansbee Steel circulated another policy regarding confidential information. It is in dispute whether the signature on the receipt that she received the policy is that of plaintiff Leonard.  Plaintiff Leonard states that she cannot remember signing the policy.  Both the 1992 and 1994 confidentiality agreements require the plaintiff to return all confidential information to defendant Follansbee Steel upon termination.

In June 1996, Carey promoted Leonard to the position of Administrative Assistant.  He promoted Leonard again in April 2000 to the position of Director of Marketing for the Sheet Metal Division.  In August 2000, he gave Leonard the additional responsibility of managing sales for the Sheet Metal Division. Throughout her employment, Carey served as Leonard's immediate supervisor.

In December 2001, Leonard's department moved to the Sheet Metal building. She remained in the Terne building and became the Director of Marketing for the Terne Division. In April 2002, Leonard filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging sex discrimination and retaliation. Subsequently, Follansbee Steel eliminated the marketing department, along with plaintiff Leonard's position on July 18, 2003, when it began outsourcing the marketing functions for the Terne Division.

On July 28, 2003, the plaintiffs, Haught, Kemp and Leonard, filed this civil action. Plaintiffs served their initial disclosures on November 12, 2003. In the disclosures, plaintiff Leonard provided a list identifying numerous documents belonging to Follansbee Steel. Follansbee Steel requested the company's documents from plaintiff Leonard and stated that it received "approximately 3000 pages of material in response to this request." (Def.'s Mot. Summ. J. Pl.'s Countercl. at 5.) The defendant provides a chart, provided by the plaintiff's counsel, which identifies all of the alleged confidential information as being provided by the plaintiff Joyce Leonard.

On February 27, 2004, this Court entered a stipulated protective order regarding confidential and/or proprietary information. The protective order covers all documents or other products of discovery produced by the parties for discovery and

4

also relates back sixty days to protect any already discovered information.

On or about August 6, 2004, plaintiff's counsel returned the original documents to Follansbee Steel. With the exception of a limited number of documents Leonard provided to the EEOC in connection with the proceedings, she has only shared the documents with her attorneys.

### III.  Applicable Law

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).  However, as the United States Supreme Court noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials

of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Id. at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979)(Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

In Celotex, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. See Oksanen v. Page Mem'l Hosp., 912 F.2d 73, 78 (4th Cir. 1990), cert. denied, 502 U.S. 1074 (1992). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party

opposing the motion.  <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith</u> <u>Radio Corp.</u>, 475 U.S. 574, 587 (1986).

IV.  <u>Discussion</u>

In its motion for summary judgment, defendant Follansbee Steel argues that it is entitled to summary judgment on its counterclaim against Leonard because: (1) plaintiff Leonard misappropriated defendant Follansbee Steel's trade secrets in violation of the West Virginia Uniform Trade Secrets Act; (2) plaintiff Leonard breached her duty of confidentiality by disclosing defendant Follansbee Steel's confidential information and trade secrets; and (3) plaintiff Leonard breached her duty to act in a manner authorized by defendant Follansbee Steel.  Defendant Follansbee Steel seeks attorney's fees and expenses and injunctive relief.

In her motion for summary judgment, plaintiff Leonard argues that: (1) injunctive relief is not an available remedy to the defendant because there is no threat that Leonard will disclose and/or disseminate the confidential documents; (2) defendant is not entitled to an award of attorney's fees; and (3) Leonard's delay in returning the confidential documents does not constitute a breach of duty owed to the defendant or a duty to act only as authorized by the defendant.

A.  <u>Misappropriation</u>

The West Virginia Uniform Trade Secrets Act discuses what constitutes misappropriation of trade secrets.  "'Misappropriation'

means: (1) Acquisition of a trade secret of another who knows or has reason to know that the trade secret was acquired by improper means; or (2) Disclosure or use of another person's trade secret without the other's express or implied consent by a person who: (B) At the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was: (ii) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use." W. Va. Code § 47-22-1(b)(1)(2)((b)(ii).

   1.   <u>Trade Secrets</u>

   Pursuant to the West Virginia Uniform Trade Secrets Act ("Act"), a trade secret is defined as:

> [I]nformation, including, but not limited to a formula, pattern, compilation, program, device, method, technique or process that: (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

W. Va. Code Ann. § 47-22-1.

   Defendant Follansbee Steel's confidential documents contained customer lists, potential customer lists, pricing information, profit margins, costs, personnel records and financial information. Defendant Follansbee Steel states that these documents are valuable to the company and its clients. Defendant Follansbee Steel maintains that some documents even contain credit card information. Defendant has shown that it is reasonable under the circumstances

8

to preserve the secrecy of the documents. Plaintiff Leonard states that she did not know the documents were trade secrets but she does not dispute that the documents, in fact, constitute trade secrets. This Court finds that defendant Follansbee Steel's documents constitute trade secrets.

   2.   <u>Duty of Confidentiality and Duty to Act as Authorized</u>

   Confidential information cannot be supplied to a third party, even if it is an attorney. <u>Zahodnick v. International Business Machines Corp.</u>, 135 F.3d 911, 915 (4th Cir. 1997). In <u>Zahodnick</u>, an employee, who signed two nondisclosure agreements, retained confidential information belonging to the company, IBM upon his termination. The employee further forwarded the documents to his counsel without IBM's consent. <u>Id.</u> The court determined that there was a breach of confidentiality and enjoined the employee from disclosing the confidential materials to third parties. <u>Id.</u>

   Defendant argues that Leonard owed it a duty to maintain the secrecy of its confidential information because she received two confidentiality agreements and a letter summarizing her duty upon termination. Defendant Follansbee Steel states that plaintiff Leonard was supposed to return all company documents upon her termination from the company. Defendant Follansbee Steel also argues that when Leonard disclosed confidential information, encompassing trade secrets, she breached her duty of confidentiality.

Plaintiff Leonard admitted she retained the documents and kept them until July 20, 2003, when she gave the documents to her counsel. Plaintiff Leonard argues that she did not provide the documents to defendant Follansbee Steel's competitors and has only shared the documents with her counsel and the EEOC. Further, plaintiff Leonard argues that she is not bound by any company policy or applicable law because she was not aware of an Invention and Confidentiality Agreement.

a. <u>Confidentiality Agreement</u>

Defendant Follansbee Steel argues that plaintiff Leonard signed two confidentiality agreements, one in 1992 and one in 1994. On or about December 4, 1992, plaintiff Leonard signed an "Invention and Confidentiality Agreement." (Def.'s Reply Ex. Stevens Aff. at 4-6.) The "Invention and Confidentiality Agreement" is a policy regarding confidential information. It states that all company documents shall be returned to defendant Follansbee Steel upon termination. In 1994, defendant Follansbee Steel circulated another policy regarding confidential information. It is in dispute whether the signature on the form acknowledging receipt of that policy is that of plaintiff Leonard. (Def.'s Reply Ex. Stevens Aff. at 7). Plaintiff Leonard first asserted that she had no memory of signing the acknowledgment of receipt of the policy. (Pl.'s Resp. ¶ 11.) Upon reflection, Leonard asserts that she could not have signed the acknowledgment because her

10

grandfather has passed away in October 1994, and she was not at work on October 5, 1994. Thus, she now denies that she signed the form. Id.

This Court finds that, even if plaintiff Leonard asserts that she did not sign or receive the 1994 confidentiality agreement, she is bound by the 1992 "Invention and Confidentiality Agreement." Joyce Leonard's signature is on the 1992 "Invention and Confidentiality Agreement" and she is bound by the 1992 agreement because it does not have an expiration date. (Def.'s Reply Ex. Stevens Aff. at 6.) This agreement states that the plaintiff Leonard shall return all confidential information to defendant Follansbee Steel upon leaving the company. See Walker v. Cringler, 976 F.2d 900, 905, n.9 (4th Cir. 1992)(a cause of action exists when an agent acts contrary to the principal's manifestation of consent.)

Plaintiff Leonard admits that she took Follansbee Steel's company documents. Plaintiff Leonard also admits that she did not give back Follansbee Steel's documents upon her termination. In her response to defendant Follansbee Steel's motion for summary judgment on defendant's counterclaim, plaintiff Leonard argues that she was not under a legally enforceable duty to return the documents more expediently. This Court finds that by not returning these documents upon her termination plaintiff Leonard did not act as authorized by her employer. Plaintiff Leonard signed the 1992

"Invention and Confidentiality Agreement," and accordingly, breached her duty to act as authorized under to the agreement. (Def.'s Reply Ex. Stevens Aff. at 6.) This Court also finds that plaintiff Leonard acknowledged receiving the July 18, 2003 letter from Mr. Edward Thomas of defendant Follansbee Steel which directed her to turn over all company documents. (Plf.'s Mot. Summ. J. on Def.'s Countercl. ¶ 1 at 2)

b. <u>Disclosure to Third-Party</u>

Defendant Follansbee Steel argues that after plaintiff Leonard's termination she disclosed the company's confidential information to a third party. Plaintiff Leonard argues that she did not disclose confidential information to a third party because she did not provide the information to a competitor of Follansbee Steel. Plaintiff Leonard asserts that her attorneys are not considered third parties pursuant to the West Virginia Uniform Trade Secrets Act.

This Court finds that it is irrelevant that plaintiff Leonard did not disclose the documents to defendant Follansbee Steel's competitors. On the other hand, it is relevant that she provided them to a third party, her attorneys. <u>See</u> <u>Zahodnick v. International Business Machines Corp.</u>, 135 F.3d 911, 915 (4th Cir. 1997)(Confidential information cannot be supplied to a third party, even if it is an attorney).

Plaintiff Leonard breached her duty of confidentiality because she disclosed confidential information to a third party, her attorneys. Since this Court finds that plaintiff Leonard misappropriated trade secrets and breached her duty of confidentiality and her duty to act only as authorized, it must determine what relief, if any, is appropriate for the defendant Follansbee Steel.

B. <u>Attorney's Fees</u>

Defendant argues that attorney's fees should be awarded pursuant to the West Virginia Uniform Trade Secrets Act, West Virginia Code § 47-22-4. "If a (a) claim of misappropriation is made in bad faith or . . . (c) willful and malicious misappropriation occurs, the court may award attorney's fees to the prevailing party. W. Va. Code § 47-22-4. Malice is "characterized by, or involving, malice; having, or done with, evil or mischievous intentions or motives; wrongful and done intentionally without just cause or excuse or as a result of ill will." <u>West Virginia v. Burgess</u>, 516 S.E.2d 491, 493 (1999)(quoting <u>Black's Law Dictionary</u> 958 (6th ed. 1990)). There is no basis for awarding attorney's fees in a trade secrets case when there is no evidence to support a conclusion of malicious intent. <u>Microstrategy, Inc. v. Business Objects</u>, 331 F. Supp. 2d 396, 430 (E.D. Va. 2004)(Malice necessary to support an award of attorney's fees in a trade secret misappropriation case requires a finding of "ill will, malevolence,

grudge, spite, wicked intention or a conscious disregard of the rights of another").

Plaintiff Leonard has given the confidential documents to her attorneys and the EEOC. There has been no further dissemination of defendant Follansbee Steel's documents. This Court finds that plaintiff did act willfully in misappropriating the documents because she took the documents and kept them. However, Leonard did not act maliciously when she misappropriated defendant Follansbee Steel's confidential information. Plaintiff Leonard did not provide the documents to a third party to intentionally financially hurt the defendant or its clients. Accordingly, there is no malicious misappropriation and the West Virginia Uniform Trade Secrets Act does not apply to this civil action.

The American rule of attorney's fees states that each party in a civil action pays for its own attorney's fees absent a contract, case law, or statute that provides to the contrary. <u>American Reliable Ins. Co. v. Stillwell</u>, 212 F. Supp. 2d 621, 633-4 (N.D. W. Va. 2002). Defendant Follansbee Steel requests attorney's fees for a breach of duty of confidentiality and a breach of duty to act only as authorized. Because there is no fee shifting statute, or contractual provision or case law that carves out an exception, the American rule must apply with respect to those two causes of action. Accordingly, defendant Follansbee Steel is not entitled to attorney's fees.

C.   <u>Injunctive Relief</u>

"Actual or threatened misappropriation may be enjoined."  W. Va. Code § 47-22-2.   In <u>Blackwelder Furniture Co. v. Seilig Manufacturing Co., Inc.</u>, 550 F.2d 189 (4th Cir. 1977), <u>Rum Creek Coal Sales, Inc. v. Caperton</u>, 926 F.2d 353 (4th Cir. 1991) and <u>Direx Israel, Ltd. v. Breakthrough Medical Corp.</u>, 952 F.2d 802 (4th Cir. 1991), the Fourth Circuit set forth equitable factors that a district court must consider when determining whether an injunction should issue.[3]   The four factors which must be considered in granting an injunction under the <u>Direx Israel</u> test are:

>   (1)  the likelihood of irreparable harm to the plaintiff if the . . . injunction is denied,

>   (2)  the likelihood of harm to the defendant if the requested relief is granted,

>   (3)  the likelihood that the plaintiff will succeed on the merits, and

>   (4)  the public interest.

<u>Direx Israel</u>, 952 F.2d at 812 (citing <u>Rum Creek</u>, 926 F.2d at 359, (citing <u>L. J. By and Through Darr v. Massinga</u>, 838 F.2d 118, 120 (4th Cir. 1988), <u>cert. denied</u>, 488 U.S. 1018 (1989))). Additionally, the "[p]laintiff bears the burden of establishing that each of these factors supports granting the injunction." <u>Direx Israel</u>, 952 F.2d at 812 (quoting <u>Technical Publishing Co. v.</u>

---

[3] <u>See also</u> <u>C/R TV Cable, Inc. v. Shannondale, Inc.</u>, 792 F. Supp. 1018, 1021-1022 (N.D. W. Va. 1992).

Lebhar-Friedman, Inc., 729 F.2d 1136, 1139 (7th Cir. 1984); Shaffer v. Globe Protection, Inc., 721 F.2d 1121, 1123 (7th Cir. 1983)).

The Direx Israel Court emphasized that "[t]he 'likelihood of irreparable harm to the plaintiff' is the first factor to be considered in this connection." Direx Israel, 952 F.2d at 812. If the plaintiff makes "a 'clear showing' of irreparable injury absent . . . injunctive relief," a district court must then balance the likelihood of irreparable harm to the plaintiff without an injunction against the likelihood of harm to the defendant with an injunction. Id.; Blackwelder, 550 F.2d at 195. Then, if a decided imbalance of hardship appears in the plaintiff's favor, the plaintiff need not show a likelihood of success; plaintiff need only show that grave or serious questions are presented by plaintiff's claim. Blackwelder, 550 F.2d at 195-96; see also James A. Merritt & Sons v. Marsh, 791 F.2d 328, 330 (4th Cir. 1986) ("when the balance of harm decidedly favors the plaintiff, he is not required to make a strong showing of a likelihood of success. . . ."). Further, the district court should also consider the public interest. Blackwelder, 550 F.2d at 196.

However, as the Blackwelder court concluded "[t]he two more important factors are those of probable irreparable injury to plaintiff without a decree and of likely harm to the defendant with a decree." Blackwelder, 550 F.2d at 196.

Defendant Follansbee Steel requests injunction relief and an order compelling Leonard to return all confidential materials to the defendant, including copies of documents that defendant Follansbee Steel provided to plaintiff Leonard's counsel for discovery purposes and documents plaintiff Leonard had misappropriated while working for defendant Follansbee Steel. This Court will first focus on the documents plaintiff Leonard misappropriated from defendant Follansbee Steel and shall analyze the facts of this case pursuant to the four factors set out in the Direx Israel test, stated above.

1.   Irreparable Harm to Defendant Follansbee Steel

Defendant Follansbee Steel must first establish that it is likely to suffer irreparable harm if injunctive relief is not granted. See Direx Israel, 952 F.2d at 812. The irreparable harm to defendant Follansbee Steel must be actual and eminent, not remote or speculative. In addition, and of particular relevance to this case, is the principle set forth in Direx Israel that "the balance of harm evaluation should precede the determination of the degree by which the plaintiff must establish the likelihood of success [on the merits]." Id. at 813.

Defendant Follansbee Steel will suffer irreparable harm if the confidential documents are disclosed to third parties. Defendant Follansbee Steel states that the documents contain customer lists, potential customer lists, financial information, personnel records

17

and credit card information.  It has been established that a company has an interest in protecting its confidential company documents.  <u>See</u> <u>Laughlin v. Metropolitan Washington Airports Authority</u>, 149 F.3d 253, 259 (4th Cir. 1998); <u>Jefferies v. Harris County Community Action Ass'n</u>, 615 F.2d 1025, 1036-37 (5th Cir. 1980)("[Employer] clearly had a legitimate and substantial interest in keeping its personnel records and agency documents confidential.").

There is the likelihood of eminent harm because Leonard has already disclosed confidential information to a third party, her attorneys and the EEOC.  This Court finds that defendant Follansbee Steel will suffer irreparable harm if the documents are disclosed to third parties because of the nature of the information.  Accordingly, defendant Follansbee Steel has met the first element for the granting of an injunction.

2.   <u>Likelihood of Harm to Plaintiff Leonard</u>

Plaintiff Leonard has not presented any evidence that she would be harmed by the granting of injunctive relief.  Plaintiff Leonard stated that she did not know the confidential documents could be related to her EEOC claim, nor do the documents she took relate to this civil action.  Plaintiff Leonard argues that the injunction is not necessary because the parties stipulated protective order covers all of the confidential documents.  This Court agrees that any documents provided for discovery purposes are

18

related to litigation. However, the documents misappropriated by plaintiff Leonard are not necessarily covered by the protective other.

This Court finds that plaintiff Leonard would not be harmed if this Court granted defendant Follansbee Steel injunctive relief. On the other hand, defendant Follansbee Steel will likely be harmed by the denial of a injunctive relief. Accordingly, defendant Follansbee Steel has a greater likelihood of harm than plaintiff Leonard.

3. <u>Merits</u>

This Court has determined that the balancing of harms to the parties in this case tips decidedly in favor of defendant Follansbee Steel, at least at this point. Therefore, on the issue of the likelihood of success on the merits, defendant Follansbee Steel must only demonstrate that it has "raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair grounds for litigation and thus for more deliberate investigation." <u>Direx Israel</u>, 952 F.2d at 813. Plaintiff Leonard admits that she kept the confidential documents after she was terminated and she disclosed the documents to a third party. This Court finds defendant Follansbee Steel has, at this time, met this third element for the granting of an injunction.

4.  Public Interest

According to the West Virginia Uniform Trade Secrets Act, "a court shall preserve the secrecy of an alleged trade secret." W. Va. Code § 47-22-5. This Court stated above that the balance of the harms in this issue, at this point tips decidedly in favor of defendant Follansbee Steel, and because Follansbee Steel, at this time, has shown the requisite level of likelihood of success on the merits and an interest in preserving the secrecy of the confidential information, the issuance of a limited injunction would appear to be in the public interest. Further, it is in the public interest to have appropriate enforcement of the West Virginia Uniform Trade Secrets Act and the "Invention and Confidentiality Agreement" in this civil action.

D.  Protective Order

Plaintiff Leonard argues that defendant Follansbee Steel is protected by the stipulated protective order and that injunctive relief is unnecessary. This Court entered a stipulated protective order, on February 27, 2004, regarding confidential and/or proprietary information. The protective order covers all documents or other products of discovery produced by the parties for discovery. The stipulated protective order states that "Counsel shall not keep Confidential Information longer than the final determination of this proceeding and shall destroy or return such Confidential Information as soon as practicable after final

determination of the proceeding or upon demand by opposing counsel." There is no time limit on the protective order. The protective order also relates back sixty days to protect any already discovered information.

Defendant Follansbee Steel argues that Leonard should be compelled to return all confidential documents, "including any documents discovered by her since her counsel originally returned Follansbee's documents." (Def.'s Mot. Summ. J. on Def.'s Countercls. at 23.) This Court finds no reason to award the defendant Follansbee Steel's injunctive relief if the protective order adequately protects their interest in the confidential documents. The protective order protects the confidential documents disclosed for discovery purposes. On the other hand, defendant has provided a reason for injunctive relief for confidential documents that are not covered by the protective order. Accordingly, this Court must grant defendant Follansbee Steel limited injunctive relief that protects any confidential documents not covered by the protective order. Plaintiff Leonard shall return all confidential documents she had misappropriated, but had not earlier returned to defendant Follansbee Steel, including any and all documents discovered to date and in the future. Plaintiff Leonard is also enjoined from further disclosing Follansbee Steel's confidential information to any third party.

## V. <u>Conclusion</u>

Because the defendant has set forth sufficient evidence to demonstrate to this Court that there is an absence of a genuine issue of material fact with respect to defendant Follansbee Steel's counterclaim, the defendant's motion for summary judgment is hereby GRANTED IN PART and DENIED IN PART and plaintiff Leonard's motion for summary judgment is hereby DENIED pursuant to Rule 56(e). Defendant Follansbee Steel's request for injunctive relief is hereby GRANTED IN PART as to the documents plaintiff Leonard misappropriated from defendant Follansbee Steel. Defendant Follansbee Steel's request for attorney's fees is hereby DENIED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:    February 17, 2006


/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE